**DIN THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) |
| JET MIDWEST GROUP, LLC, | ) |
| | ) |
| Debtor. | ) |
| ———————————————— | ) |
| JET MIDWEST INTERNATIONAL CO., LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JET MIDWEST GROUP, LLC, and F. PAUL | ) |
| OHADI IN HIS CAPACITY AS TRUSTEE OF | ) |
| THE F. PAUL OHADI TRUST DATED | ) |
| DECEMBER 15, 1999, | ) |
| | ) |
| Defendants. | ) |
| ———————————————— | ) |

CHAPTER 11

Case No. 18-10395-KJC

Adv. Pro. No. _____

## COMPLAINT

Plaintiff JET MIDWEST INTERNATIONAL CO., LTD. (hereinafter, "JMI"), formerly known as Yortime Development Ltd., by and through its undersigned counsel, for its Adversary Complaint against Debtor Jet Midwest Group, LLC ("Debtor") and F. Paul Ohadi in his capacity as Trustee of The F. Paul Ohadi Trust dated December 15, 1999 (the "Ohadi Trust"), states as follows:

## THE NATURE OF THIS COMPLAINT

1.      The purpose of this Complaint is to recover specific, uniquely-valuable property that the Debtor fraudulently transferred to one of its co-owners just weeks before the Debtor's commencement of this Chapter 11 case.  The property at issue consists of share certificates evidencing the ownership of 1,449,172 shares of common stock in a publicly-traded corporation known as Airborne Wireless Network ("AWN").

2.      As of the date of the filing of this Complaint, AWN shares are trading at approximately $2 per share.  Accordingly, the certificates that the Debtor transferred have a potential value of approximately $3 million as of the date of the instant filing.

3.      The certificates are uniquely important to this case because the Debtor has no other unencumbered liquid assets of comparable value on its books.  The Debtor had only $10,557 in remaining cash on hand as of November 2017, according to its balance sheet.  *See* Ex. 1.[1]  The Debtor's balance sheet indicates that the Debtor also still had a small inventory of aircraft and engines.  *Id*.  However, the Debtor has represented that each aircraft and engine that it has acquired from May 2015 through December 2017 is owned by, or encumbered by liens held by, its owners or other individuals.  *See* Ex. 2.

4.      The Debtor's balance sheet also indicates that it has net accounts receivable in the amount of $2,089,613 as of November 2017.  *See* Ex. 1.  However, the Debtor's A/R Aging Summary indicates that the Debtor's net accounts receivable are comprised almost entirely of amounts allegedly owed to the Debtor by Dynamic International Airways, LLC ("Dynamic").  *See* Ex. 3.  Dynamic is currently in a Chapter 11 restructuring proceeding before the U.S. Bankruptcy Court for the Middle District of North Carolina.  *See* Ex. 4.  Consequently, this account receivable is unlikely to be collectable during this case.

5.      In sum, the certificates are an extremely significant part of the Debtor's bankruptcy estate.  Until January 22, 2018, the certificates were being kept by the Debtor at its office in Los Angeles, California.  However, on January 22, 2018, the Debtor sent the certificates by Fed Ex to an attorney in Utah who represents one of the Debtor's co-owners:

---

[1] The documents and information cited herein regarding the Debtor's finances were obtained by JMI's counsel from the Debtor during post-judgment discovery in a separate federal action, prior to the Debtor's commencement of this Chapter 11 bankruptcy case.

the Ohadi Trust.  The Debtor sent the certificates to the Ohadi Trust to evade a then-pending

TRO application.  It is unclear what the Ohadi Trust did with the certificates upon receiving

them from the Debtor.  The Debtor filed this Chapter 11 case five weeks later.

6.      As discussed below, the Ohadi Trust does not have a legitimate claim to the

certificates.  The Ohadi Trust should be ordered to deposit the certificates with the Court

or the Trustee, or place them in escrow, pending further proceedings in this case.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this adversary proceeding pursuant to 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware dated as of February 29, 2012.

8.      This proceeding is a "core proceeding" pursuant to 28 U.S.C. §

157(b)(2)(A), (B), (L), (N) and (O).

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL AND FACTUAL BACKGROUND

10.      On January 24, 2017, JMI sued the Debtor in the U.S. District Court for the

Western District of Missouri in an action entitled *Jet Midwest International Co., Ltd. v. Jet

Midwest Group, LLC*, W.D. Mo., No. 5:17-cv-06005-DW (the "Term Loan Action").

11.      On October 25, 2017, the Court granted summary judgment in favor of JMI

and against the Debtor in the Term Loan Action.  In that decision, the Court found that the

Debtor had breached a term loan agreement (the "Loan Agreement") by failing to repay a

$6.5 million loan made by JMI, as lender, to the Debtor, as borrower (the "Loan").

12.      On October 26, 2017, the Court entered a final judgment (the "Judgment")

in the Term Loan Action.  The Judgment awards JMI the following: (1) unpaid principal

in the amount of $6.5 million plus interest from September 5, 2016 at a rate of 14% per annum until the Judgment is satisfied, and (2) unpaid interest in the amount of $75,833.37 for the required interest payment that was due on September 5, 2016 that the Debtor failed to pay. *See* Term Loan Action, Dkt. No. 50. As of the date of the filing of this Complaint, the total, cumulative amount of the outstanding Judgment is: $7,904,391.74.

13. Because of the Debtor's failure to pay the Judgment, JMI began the process of post-judgment discovery and execution. During that process, JMI uncovered publicly-available SEC filings by AWN indicating that, from November 2016 to date, AWN has issued a total of 1,449,172 shares of its common stock to the Debtor. *See* Exs. 5, 6.

14. On Friday, January 19, 2018, JMI's counsel deposed the Debtor's Chief Financial Officer, Michael Logan. During that deposition, Mr. Logan confirmed that AWN had issued shares to the Debtor. *See* Ex. 7. Mr. Logan further testified that AWN issued the shares in the form of physical share certificates, and that those certificates were in the Debtor's physical possession at the Debtor's office in Los Angeles, California. *Id.*

15. On Monday, January 22, 2018, JMI submitted a TRO application to the U.S. District Court for the Western District of Missouri. In that TRO application, JMI sought an order requiring the Debtor to preserve the share certificates so that they could be used to satisfy the Judgment. JMI copied the Debtor's counsel on that TRO submission.

16. On Tuesday, January 30, 2018, the Debtor filed its opposition to JMI's TRO application. *See* Ex. 8. In that opposition, the Debtor revealed that, on Monday, January 22, 2018 – *i.e.*, the exact same date on which JMI had submitted its TRO application – the Debtor sent the share certificates from its Los Angeles office to a Utah-based attorney named Bradley Helsten, Esq., in Mr. Helsten's capacity as counsel for the Ohadi Trust.

4

*See id.*  The Debtor clearly sent the share certificates to Mr. Helsten as a reaction to, and to undermine the Court's ability to rule on, JMI's January 22, 2018 TRO application.

17.     According to the Debtor's Operating Agreement, the Ohadi Trust is one of the Debtor's co-owners.  *See* Ex. 9.  The Debtor's outside counsel, David Kulowiec, Esq., has confirmed that the Ohadi Trust is one of the Debtor's co-owners.  *See* Ex. 10.

18.     The website of Mr. Helsten's law firm (www.helstenlaw.com) reveals that, in addition to representing the Ohadi Trust, Mr. Helsten also represents an individual named Kenneth M. Woolley.  *See* Ex. 11.  Like the Ohadi Trust, Mr. Woolley is one of the co-owners of the Debtor.  *See* Ex. 10.  Mr. Helsten's website lists Mr. Woolley as among the firm's "Current Representative Clients and Professional References."  *See* Ex. 11.

19.     By sending the certificates to Mr. Helsten, the Debtor deliberately obstructed the Court's ability to rule on JMI's January 22 TRO application.  Upon learning that the certificates had been sent to the Ohadi Trust, JMI demanded that the Ohadi Trust deposit the share certificates with the Court pending further proceedings.  *See* Ex. 12.  The Ohadi Trust did not respond to JMI's demand and did not deposit the certificates.

20.     The Ohadi Trust subsequently moved to intervene in the Term Loan Action (the "Intervention Motion.")  *See* Ex. 13.  In that Intervention Motion, the Ohadi Trust attempted to justify the transfer of the certificates by claiming to have a "security interest in most, if not all, of [the Debtor's] property," including the certificates.  *See* Intervention Motion at 1.  Before the Intervention Motion could be ruled upon by the Court, the Debtor filed the instant Chapter 11 case.

21.     A review of the Intervention Motion and the exhibits attached to that motion shows that the Ohadi Trust's claim to the share certificates is without merit.

## THE OHADI TRUST HAS NO VALID CLAIM TO THE CERTIFICATES

22.    Based on a review of the Ohadi Trust's Intervention Motion and the exhibits attached to that motion, it is clear that the Ohadi Trust's supposed security interest in the AWN share certificates was recently contrived and cannot be substantiated.

23.    According to the Intervention Motion, on June 18, 2015, the Debtor and its affiliate Jet Midwest, Inc. signed a promissory note (the "Promissory Note") in favor of the Ohadi Trust in the amount of $11 million.  *See* Intervention Motion, Ex. A.

24.    At that time, AWN had not yet issued any shares to the Debtor.

25.    The Intervention Motion shows that, in making the $11 million loan, the Ohadi Trust became a co-owner of the Debtor, Jet Midwest, Inc., and their affiliate, Dynamic International Airways, LLC.  *See id.* at 2.

26.    According to the Intervention Motion, the maturity date of the Promissory Note was August 1, 2016.  *See id.* at 1.

27.    According to the Intervention Motion, on August 1, 2016, the Debtor and Jet Midwest, Inc. failed to pay the amount due under the Promissory Note.  *See* Intervention Motion, Ex. C, ¶¶ 12-13.

28.    In November 2016, AWN publicly disclosed, in an SEC filing, that it was issuing shares to the Debtor.  *See* Ex. 5.  This announcement came approximately two months after the Debtor apparently had defaulted on the Promissory Note, as noted earlier.

29.    Despite the fact that AWN's issuance of shares to the Debtor was a matter of public record, the Ohadi Trust did not foreclose on the shares or take any steps to perfect any supposed security interest in the certificates.  *See* Intervention Motion, Ex. C.

30. Around one year then elapsed. In the Intervention Motion, there is no evidence that the Ohadi Trust did anything during this period of time to foreclose upon the certificates, or to perfect any supposed security interest in the certificates.

31. On October 26, 2017, the Court entered the Judgment against the Debtor.

32. On November 6, 2017 – a little over two weeks after the entry of the Judgment – the Ohadi Trust sent a notice of default to the Debtor. *See id.* ¶ 15. The November 6, 2017 notice of default concerned the Debtor's default on the Promissory Note, which allegedly had occurred over 14 months earlier. *See id*. ¶¶ 12-13.

33. After sending the notice of default, the Ohadi Trust still did nothing to foreclose on the certificates, or to perfect any security interest in the certificates.

34. On January 22, 2018, JMI submitted its TRO application to the Court to require the Debtor to preserve the certificates. In response, the Debtor immediately sent the certificates by Fed Ex to an attorney who represents the Ohadi Trust.

35. As this chronology of events demonstrates, there is no evidence in the Intervention Motion that the Ohadi Trust ever asserted, let alone attempted to enforce, a security interest in the certificates in the ordinary course of business. The Ohadi Trust's position that it has such an interest was invented *after* the Judgment was entered.

36. In support of its position that it has a security interest in the certificates, the Ohadi Trust attached two additional documents to the Intervention Motion: (1) a document entitled Aircraft Mortgage and Security Agreement (the "Aircraft Mortgage"), and (2) a document entitled Security Agreement (the "Security Agreement"). *See* Intervention Motion, Ex. B. The Ohadi Trust claims that these instruments were executed on or about August 14, 2015 to retroactively create collateral for the Promissory Note, which had been

signed by the Debtor and Jet Midwest, Inc. on or about June 18, 2015.  *See* Intervention Motion at 2.  However, neither document lends even the slightest support to the Ohadi Trust's position that it actually has a security interest in the share certificates.

37.     The Aircraft Mortgage does not refer to the AWN share certificates or any property of a similar nature.  It refers to specific airframes and engines that evidently had been acquired with the $11 million loaned by the Ohadi Trust to the Debtor.

38.     The Security Agreement also does not refer to the AWN share certificates. It purports to create a security interest in "substantially all tangible and intangible assets" of the Debtor.  *See* Intervention Motion, Ex. B at 2.  But as a threshold matter, such a vague description of debtor collateral is facially invalid.  *See* 6 Del. C. § 9-108(c).

39.     In addition, the Debtor did not possess the AWN share certificates when the Security Agreement was signed.  As noted earlier, AWN did not issue the certificates to JMG until November 2016, over a year after the signing of the Security Agreement.  *See* Ex. 5.  The Security Agreement does not purport to apply to after-acquired property.

40.     The Debtor's own conduct also confirms that the Security Agreement is inapplicable to after-acquired property.  According to the Intervention Motion, the Security Agreement was signed on or about August 14, 2015.  *See* Intervention Motion at 2. According to the Intervention Motion, the Debtor subsequently entered into other secured financing transactions with other lenders in 2016 and 2017.  *See id*., Ex. C at 83-115.  The Debtor could not have entered into those additional secured transactions if all its assets had already been encumbered by an all-encompassing lien held by the Ohadi Trust.

41.     In sum, on the face of the Intervention Motion, there is no legal justification for the Debtor's recent transfer of the AWN share certificates to the Ohadi Trust.

## FIRST CAUSE OF ACTION: DELAWARE UNIFORM FRAUDULENT TRANSFER ACT – AGAINST THE DEBTOR

42.     JMI hereby realleges and incorporates by reference the matters set forth in Paragraphs 1-41 *supra*.

43.     Pursuant to the Delaware Uniform Fraudulent Transfer Act (6 Je t §§ 1301-1311), JMI hereby asserts a cause of action against the Debtor as transferor of the share certificates.

44.     As described herein, the Debtor fraudulently transferred the AWN share certificates with actual intent to hinder, delay and defraud JMI.

45.     As described herein, the fraudulent transfer was made without receiving a reasonably equivalent value in exchange.

46.     As described herein, when the fraudulent transfer was made, the Debtor was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

47.     As described herein, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

48.     As described herein, the Debtor was insolvent when the fraudulent transfer was made, and its insolvency worsened as a result of such fraudulent transfers.

49.     As described herein, the Ohadi Trust is an insider of the Debtor.

50.     As described herein, the Ohadi Trust knew or had reasonable cause to believe that the Debtor was insolvent.

## SECOND CAUSE OF ACTION: DELAWARE UNIFORM FRAUDULENT TRANSFER ACT – AGAINST THE OHADI TRUST

51.     JMI hereby realleges and incorporates by reference the matters set forth in Paragraphs 1-50 *supra*.

52.     Pursuant to the Delaware Uniform Fraudulent Transfer Act (6 Del. C. §§ 1301-1311), JMI hereby asserts a cause of action against the Ohadi Trust as transferee of the AWN share certificates.

53.     Each transfer at issue violated 6 Del C. §§ 1304, 1305 and 1306.

54.     As described herein, the fraudulent transfer was made with actual intent to hinder, delay and defraud JMI.

55.     As described herein, the fraudulent transfer was made without receiving a reasonably equivalent value in exchange.

56.     As described herein, when the fraudulent transfer was made, the Debtor was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

57.     As described herein, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

58.     As described herein, the Debtor was insolvent when each fraudulent transfer was made, and its insolvency worsened as a result of such fraudulent transfers.

59.     As described herein, the Ohadi Trust is an insider of the Debtor.

60.     As described herein, the Ohadi Trust knew or had reasonable cause to believe that the Debtor was insolvent.

## **RELIEF REQUESTED**

WHEREFORE, JMI demands judgment in its favor and against the Debtor and the Ohadi Trust in the form of:

(a)  avoidance of the fraudulent transfer of the AWN share certificates;

(b)  an order requiring the share certificates or proceeds thereof to be deposited with this Court, with the Chapter 11 Trustee, or with a neutral, third-party escrow agent pending further proceedings in this case; and,

(c)  such additional and other relief as the Court may deem just and proper.

Dated:  March 2, 2018  **DORSEY & WHITNEY (DELAWARE) LLP**
By /s/ Eric Lopez Schnabel
Eric Lopez Schnabel (DE No. 3672)
Robert W. Mallard (DE No. 4279)
Alessandra Glorioso (DE No. 5757)
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801
E-mail:  schnabel.eric@dorsey.com
          mallard.robert@dorsey.com
          glorioso.alessandra@dorsey.com

**DORSEY & WHITNEY LLP**

Richard H. Silberberg
Geoffrey B. Sant
Eric Epstein
51 W. 52nd Street
New York, NY 10019
Telephone:  (212) 415-9200
E-mail:  silberberg.richard@dorsey.com
          sant.geoffrey@dorsey.com
          epstein.eric@dorsey.com

*Attorneys for Jet Midwest International Co., Ltd.*